UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60073-CIV-DIMITROULEAS

LETTY HERNANDEZ, et al.,

                                                   Magistrate Judge Snow

    Plaintiff,

vs.

STARBUCKS COFFEE COMPANY,
a foreign corporation qualified to do business
in Florida as STARBUCKS CORPORATION,

    Defendant.
_____/

**ORDER DENYING MOTION FOR DECERTIFICATION**

THIS CAUSE is before the Court upon Defendant Starbucks Corporation's Corrected Motion for Decertification [DE-240], filed herein on May 6, 2011.  The Court has carefully considered the Motion, Plaintiffs' Opposition [DE-270], Defendant's Reply [DE-277], the arguments presented at the hearing before the undersigned on June 24, 2011, and is otherwise fully advised in the premises.  This Order memorializes the Court's ruling from the bench on June 24, 2011, wherein the Court denied the instant Motion.

**I.  BACKGROUND**

Plaintiff, Letty Hernandez, brings suit on behalf of herself and all those similarly situated to her for relief under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and specifically under 29 U.S.C. § 216(b) (hereinafter, "FLSA").  Plaintiff alleges that when she was an employee of Defendant Starbucks Coffee Company ("Starbucks"), Defendant improperly classified Hernandez and those similarly situated to her as "store managers" which are positions exempt from overtime compensation eligibility.  Thus, Plaintiffs claim that when they worked in excess of forty hours per work week, Defendant denied them proper overtime pay.  Following the

two-tiered approach to certification of collective actions under Section 216(b) endorsed by *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F. 3d 1208, 1219 (11th Cir. 2001), on April 23, 2009, this Court granted conditional class certification and permitted Court-supervised notification to the potential putative class members. [DE-33]. The opt-in period is now closed with approximately 715 current and former Starbucks store managers throughout the country opting into this litigation.

## II. DISCUSSION

**A.      Standard of Review**

Section 216(b) of the FLSA provides that an action for unpaid overtime compensation may be maintained by "any one or more employees for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). The Eleventh Circuit has endorsed a two-tiered approach to certification of collective actions under Section 216(b). *Hipp,* 252 F. 3d at 1219. In the notice stage of the case, the district court makes an initial determination in certifying the proposed class using a fairly lenient standard, resulting in a conditional certification. *See id.; Stone v. First Union Corp.*, 203 F.R.D. 532, 536 (S.D. Fla. 2001). "At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members." *Id.* at 1218 (citing *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-14 (5th Cir. 1994).

The second stage "is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Id.* "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated,

the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Id.* "[A]lthough the FLSA does not require potential class members to hold identical positions . . . the similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Anderson v. Cagle's, Inc.,* 488 F.3d 945, 953 (11th Cir. 2007) (internal citations omitted). The "more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action." *Id.* The present action is now at the second stage, with Defendant filing the instant motion for decertification.

**B.   Defendant's Motion for Decertification**

Defendant argues that extensive discovery reveals that the 715 opt-ins are not similarly situated and that the case cannot be resolved on the basis of common evidence. Defendant concedes that common evidence exists as to whether Starbucks store managers are exempt through job descriptions, manuals, partner guides, and performance evaluation forms. [DE-240-23, 25, 26, 41] (collectively referred to as "common evidence"). Defendant believes that this common evidence shows that the primary duty of store managers is to manage Starbucks stores. As such, Defendant argues that Plaintiffs cannot prove their case on a class basis based on such common evidence, but instead must rely on highly individualized inquiries into the day-to-day experiences of particular opt-in Plaintiffs. Defendant contends that even if the testimony of the opt-ins is credited, it shows that they are not similarly situated with respect to the key issues relevant to determining whether they are exempt such that decertification is appropriate.

In opposition, Plaintiffs largely rely on *Pendlebury v. Starbucks Coffee Company,* 518 F. Supp. 2d 1345 (S.D. Fla. 2007), where Judge Marra denied a similar motion for decertification by Defendant.  Plaintiffs argue that this case presents the same facts and issues that were before the *Pendlebury* court, and point out that Defendant concedes that its store managers are as similar now as they were in *Pendlebury.*  Specifically, Plaintiffs point out that the same similarities Defendant conceded in *Pendlebury* continue to exist here: the stores are set-up similarly, [DE-271-7, pg. 6]; the same expectation of consistent experience in stores exists, [DE-271-3, pg. 35; DE-271-7, pg. 6]; store managers are expected to be able to run a new store on day one after a transfer, *id.* at pgs. 7-8; all stores have the same positions except for assistant managers, *id.* at pgs. 9-10; the store manager written description is generated from Defendant's support center with a single job description for all store managers, [DE-271-3, pgs. 47-50]; store managers go through all the modules from the corporate training plan, *id.* at pgs. 50-51; all store managers report to a district manager and implement the ALS scheduling system, [DE-271-7, pg. 13]; the store manager's duties and responsibilities are consistent throughout the organization, *id.* at pg. 14; the first four weeks of the eight-week training for store managers are focused on Barista and shift supervisor duties and responsibilities, [DE-271-3, pgs. 59-60]; the store managers' roles and responsibilities are expected to be in addition to the roles and responsibilities of Baristas, shift supervisors, and assistant store managers, *id.;* [DE-271-64, pg. 3]; and the decision to classify store managers as exempt or non-exempt is made at Defendant's Seattle support center, [DE-271-7, pg. 16].  *See generally Pendlebury,* 518 F. Supp. 2d at 1350-1353 (identifying identical facts).  In fact, Plaintiffs point out that Defendant's representatives, Anne McEntee and Constance Lange, testified that they were unaware of any regional differences that would affect

the classification of the store manager job, [DE-271-5, pgs. 28-29; DE-271-3, pgs. 55-57], and that Defendant did not make individual classification decisions, [DE-271-5, pgs. 21-22]. *See also Pendlebury,* 518 F. Supp. 2d at 1351.

As such, Plaintiffs argue that Defendant is attempting to make the same distinctions that were unsuccessful in *Pendlebury*. Plaintiffs argue that most if not all of the supposed "differences" between class members identified by Defendant are merely a function of different "management styles" – both from the standpoint of the store managers and the district managers who micro-manage them:

> [m]any of the differences Defendant identifies are partially attributable to different management styles, either by the store manager or the district manager. In sum, every class under § 216(b) will have differences; however, class members need only be similar, not identical. If Defendant's contentions that the class must be similar in almost all respects was to prevail, the intent behind class certification under § 206(b) would be frustrated and the statute's class provisions would be effectively emasculated.

*Pendlebury,* 518 F. Supp. 2d at 1362. Therefore, Plaintiffs argue that as store managers they are similarly situated regardless of whether they, or their supervising district managers, have different management styles.

Although *Pendlebury* is not controlling on this Court, the Court nonetheless finds the *Pendlebury* analysis to be exhaustive, persuasive, and dispositive given that *Pendlebury* and this action involve largely the same factual and legal issues. Importantly, Defendant has not identified how this action materially differs from *Pendlebury* as to the "similarly situated" analysis. On the contrary, the Court finds that the common evidence and testimony of Defendant's own corporate representatives as identified above continues to suggest that the same

5

class treatment from *Pendlebury* is appropriate. In other words, "Starbucks' own admissions demonstrate that store managers are similar in numerous ways. The store managers all follow the same training protocols and all share the same duties and responsibilities. In fact, the store managers' collective duties and responsibilities have been used by Starbucks as justification to classify them all as exempt, belying Starbucks' contention that the store managers are not similarly situated for FLSA purposes." *Id.* at 1353. Although "merely classifying a group of employees as exempt does not automatically qualify them as similarly situated . . . Defendant's practice of blanket classification does carry some weight in this analysis." *Id.* Thus, as in *Pendlebury,* the Court concludes at the outset that Defendant store managers all share similar job duties and are classified the same throughout the United States.

However, the above finding does not end the Court's inquiry. *See Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1246, n. 46 (11th Cir. 2008) ("Just because a business classifies all employees in a particular job category as exempt does not mean that those employees are necessarily 'similarly situated' for purposes of a 29 U.S.C. § 216(b) collective action."). Rather, the Court must conduct a more "fact intensive, individualized inquiry to determine if the similarities of the store managers 'extend 'beyond the mere facts of job duties and pay provisions.'" *Pendlebury,* 518 F. Supp. 2d at 1353 (quoting *Anderson,* 488 F.3d at 953). In doing so, "an evaluation on the merits of the exemption is not appropriate at this juncture; rather, the relevant question is whether the members of the class are sufficiently similar in the essential criteria needed to uphold or reject the exemption, thereby warranting collective treatment," with emphasis on the fact that the "FLSA does not require potential class members to hold identical positions." *Id.* (internal citations omitted). In performing the similarly situated

analysis, the Court considers the following factors: 1) the disparate factual and employment settings of the individual plaintiffs; 2) the various defenses available to defendants that appear to be individual to each plaintiff; and 3) fairness and procedural considerations. *Id.* at 1349 (citing *Anderson*, 488 F.3d at 953). "In conducting this analysis, the Court keeps at the forefront the Eleventh Circuit's repeated assertions that class members need only be similar, not identical." *Id.* (citing *Anderson*, 488 F.3d at 953).

### 1. Disparate Factual and Employment Settings

As to the first factor, Defendant argues that significant disparities exist across the full range of key factors in the exemption analysis and, therefore, the class should be decertified. Defendant points out that to be properly classified as an exempt executive, an employee must: (1) be compensated on a salary basis at a rate of not less than $455 per week; (2) have management as his primary duty; (3) customarily and regularly direct the work of two or more other employees; and (4) have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(1)-(4). Defendant argues that there are major differences among Plaintiffs with respect to the second and fourth factors.

#### a. Primary Duty Factor

Factors to consider when determining the primary duty of an employee include: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other

employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700(a). Defendant does not address the fourth factor and, thus, this factor will not be considered by the Court in its analysis.

### i. *Relative Importance of Exempt Duties*

Defendant argues that the common evidence, including the performance evaluations and documents pertaining to store manager bonus awards, demonstrates that the managerial tasks of store managers had far more to do with the success of Starbucks stores than non-managerial tasks. [DE-240-26; 240-27]. Much like it did in *Pendlebury,* Defendant compares the testimony of some Plaintiffs testifying that Barista duties were the most important tasks performed, [DE-240-16, pg. 159], with the testimony from other Plaintiffs that they motivated partners and increased sales through incentives, [DE-240-6, pgs. 84-86]. Defendant argues that given the variations in Plaintiffs' testimonies regarding the relative importance of their managerial duties, this factor cannot be evaluated on a collective basis.

Plaintiffs respond, as they did in *Pendlebury*, by pointing to the testimony of store managers who asserted that taking care of the customer was their most important responsibility and offer the common evidence as showing that even Defendant considers store managers' non-exempt duties to be more important than any administrative tasks. Relying on Defendant's "success profiles," Plaintiffs point out that a store manager would receive a "must improve" rating if the store manager performed managerial or administrative tasks rather than interacting with customers as compared with an "above expectations" rating for suggesting and selling products to customers regularly. [DE-271-65]. Plaintiffs also point out that store managers are

8

automatically scheduled to work "coverage" (on the floor performing Barista duties) at least 32 out of the 40 scheduled hours a week, thereby demonstrating that store managers' non-exempt duties were of primary importance to Defendant. [DE-271-85].

The factual record before the Court as to this factor seems to be largely unchanged from that presented to Judge Marra in *Pendlebury*. As such, the Court is not persuaded that there is any basis to recede from Judge Marra's conclusion that the evidence presented by Defendant seems to focus on "different management styles of the individual opt-in Plaintiffs, rather than on the similarity of the tasks the managers are required to perform and the impact the performance of the various tasks have on the success of the stores." *Pendlebury,* 518 F. Supp. 2d at 1355. "The fact that many managers will go about the performance of a particular task in different ways does not mean that they have different responsibilities. So long as the tasks are similar, not identical, class treatment is appropriate." *Id.* Consequently, "[a]bsent any record evidence that the exempt duties performed by the managers as compared to the non-exempt duties differ in relative importance, and recognizing that differing management styles does not translate into having different responsibilities, the Court fails to see how the managers' differing perceptions on how they contribute to a store's success renders the class dissimilar." *Id.* at 1355.

### ii. *Amount of Time Spent Performing Exempt Work*

Next, Defendant argues that no common evidence can establish the amount of time that particular Plaintiffs spent performing exempt work as the testimony of the eighteen (18) Plaintiffs who were deposed reveals significant variation in this regard. Defendant points out that some Plaintiffs testified that while they were working on the floor they were constantly

9

performing managerial duties, *see* [DE-240-6, pgs. 144-45 (reviewing and directing partners work while on the floor); 240-20, pgs. 46, 135-36 (monitoring reports and partners, observing and delegating while on the floor); 240-21, pg. 58 (constantly monitoring performance); 240-12, pg. 50 (constant monitoring while on the floor)], whereas others testified they were too busy when performing non-exempt tasks to also perform managerial functions, *see* [DE-240-16, pgs. 67-68 (hard to do anything besides Barista duties while on the floor)]. Defendant also argues that the testimony shows considerable variation in the amount of time Plaintiffs spent performing managerial work, *see* [DE-240-21, pgs. 78-79 (about 25 hours per week on administrative tasks)], and that the amount of managerial work changed substantially during the relevant time period for some Plaintiffs. As such, Defendant contends that a jury cannot make a decision regarding the time Plaintiffs spent on exempt tasks based on common evidence.

Plaintiffs counter that nearly every Plaintiff deposed stated that the majority of their time was spent performing non-exempt Barista duties. *See generally,* [DE-271-12, pg. 282 (80-90% of time spent on non-managerial duties); DE-271-14, pgs. 174-75 (90% of time spent on the floor on non-managerial tasks)]. Plaintiffs argue that Defendant was only able to identify four (4) Plaintiffs who indicated they could effectively engage in any kind of "management" duties while also performing non-exempt duties. Plaintiffs argue that Defendant cannot establish dissimilarity by claiming that Plaintiffs spent varying amounts of time performing administrative tasks. Relying on Judge Marra's reasoning in *Pendlebury,* Plaintiffs argue that the "fact that many managers will go about the performance of a particular task in different ways does not mean that they have different responsibilities. So long as the tasks are similar, not identical, class treatment is appropriate." 518 F. Supp. 2d at 1355. Plaintiffs argue that Defendant is attempting to rely on

10

evidence of different "management styles" that was previously rejected by Judge Marra. Plaintiffs also point out that Defendant's argument is disingenuous given that store managers are generally required to schedule themselves for at least 32-40 hours of coverage per week [DE-271-85], meaning non-administrative, customer-oriented tasks, and the physical requirements outlined in the written job description [DE-242-11, pg. 5] show that a store managers' most important functions are those relating to performance of customer-service duties. As such, Plaintiffs argue that it is no wonder that Judge Marra concluded that there "is little dispute that much of the store managers' time is spent performing non-managerial tasks." *Pendlebury,* 518 F. Supp. 2d at 1352.

In *Pendlebury,* Defendant offered the testimony of only one plaintiff who testified that he spent more than fifty percent of his time on exempt work. Based upon this evidence, Judge Marra easily concluded that the plaintiffs were similarly situated with respect to this factor. *Pendlebury*, 518 F. Supp. 2d at 1354. In comparison, here Defendant relies upon the testimony of approximately four (4) Plaintiffs indicating that they were able to engage in management duties while also concurrently performing on the floor non-exempt duties. Yet, it is clear that the majority, if not all Plaintiffs, contend to have spent the majority of their time performing non-exempt duties. The Court reiterates that Plaintiffs need only demonstrate that they are similar, not identical. While working on the floor and concurrently managing may create some differences between the class, the Court is not persuaded that such variations in testimony rise to the level of material differences such that the class is not similarly situated. *Anderson,* 488 F.3d at 953. Instead, such differences seem to be attributable to individual store manager's "management styles" that do not materially undermine the overall similarity of the class.

### *iii.     Relative Freedom From Direct Supervision*

There is no dispute that all store managers report to a district manager. [DE-271-7, pg. 13]. However, Defendant argues that the testimony of the deposed Plaintiffs reflects significant variation in the degree to which Plaintiffs contend they were constrained by Starbucks policies and district managers. Defendant points out that some Plaintiffs testified that the district managers were present every day, *see* [DE-240-18, pg. 44], whereas others testified that district managers only visited a few times a year, *see* [DE-240-11, pg. 173]. Defendant also argues that there was divergent testimony as to the nature of the district manager's oversight, specifically regarding the varying role and discretion of the store manager as to training and developing partners, discipline, scheduling, store appearance and set-up, and store inventory. Defendant argues that the substantial variation as to Plaintiffs' freedom from supervision and carrying out their key managerial responsibilities shows that the jury cannot decide this factor on a common basis.

Plaintiffs counter that as in *Pendlebury,* the critical fact is that all store managers are subject to some form of direct supervision and the extent of district manager oversight is carefully controlled at the corporate level as to various aspects of store operation. As to training, Plaintiffs point out that training is uniform across the company and note that Judge Marra found that any differences in training merely reflected "different leadership and management styles." *Pendlebury,* 518 F. Supp. 2d at 1359. Similarly, as to the ALS scheduling system, Plaintiffs point out that Judge Marra concluded that the "fact that some managers were able to alter the ALS-generated schedules weighs slightly in Defendant's favor, but does not overcome the overriding similarity relative to the required use of the ALS system and the expected adherence

to the schedules produced by it." *Id.* at 1357. Regarding the differences in store appearance and set-up, Plaintiffs again point to Judge Marra's finding that "all store managers were required to follow the 'Siren's Eye' —a corporate document which details exactly how stores should be set-up for an upcoming promotion or sale by detailing where products should be placed in the store" and ultimate conclusion that "there are no material differences evident among the opt-in Plaintiffs with respect to store appearance and set-up." *Id.* at 1358. On the issue of discipline, Plaintiffs argue that regardless of district manager involvement, an infraction required that discipline be issued. Finally, as to ordering, Plaintiffs argue that Defendant ignores significant similarities as to store managers in that all store managers must adhere to Defendant's extensive rules, certain items can only be ordered by the district manager, some items are auto-shipped or auto-replenished, a district manager must approve emergency orders, certain items must be obtained from a particular vendor, and district managers must even be asked about placing a water filter order.

Once again, the Court finds Judge Marra's reasoning in *Pendlebury* to be instructive and dispositive on this factor. Importantly, Defendant has not identified how the facts as to this factor have changed since *Pendlebury*, such that there are now material differences. Instead, as in *Pendlebury,*

> [w]hile Defendant successfully highlights differences among some members of the purported class relative to the degree to which they may be free from direct supervision, the critical fact remains that all store managers are subject to some form of direct supervision. Surely, just as store managers have different management styles, so too do district managers. Whether a district manager chooses to check in weekly or monthly, by telephone or e-mail, once a week or once a month, is primarily indicative of a district manager's style of management. The amount of oversight is also a function of the capabilities and experience of the store manager.

> These individualized differences are not sufficient to outweigh the overriding similarity that store managers share . . . The overall similarities relative to direct supervision outweigh the individual differences that may exist.

518 F. Supp. 2d at 1356.

### b. Hire or Fire Factor

Defendant argues that the common evidence shows that it give managers more than enough authority in these areas to satisfy the exemption, whereas in order for Plaintiffs to reject the common evidence Plaintiffs must rely on testimony that is too individualized and varied to support class treatment. For instance, Defendant points out that Plaintiffs testimony regarding their role and discretion in hiring, evaluation and pay rate, promotion, and termination varied widely making this case unsuitable for collective treatment.

Plaintiffs respond that these are the same supposed differences that were rejected in *Pendlebury*. Plaintiffs point out that Defendant has only offered the testimony of two (2) Plaintiffs whose district managers made hiring decisions without their input and two (2) whose district managers had to interview candidates. Further, while Defendant has attempted to offer evidence that evaluation ratings are used to determine pay increases, Plaintiffs argue that as in *Pendlebury,* "all opt-in Plaintiffs prepare evaluations and all are reviewed by the district manager at some point." *Id.* at 1360. As to promotions, while Defendant points to two (2) Plaintiffs whose district managers were not involved at all in promotion decisions, Plaintiffs point out that nearly all Plaintiffs had some degree of district manager involvement and argue that "just as store managers' management styles differ, so too will the styles of district managers." *Id.* at 1359. Plaintiffs emphasize Judge Marra's conclusion that it is "unreasonable to expect all district

14

managers to act, think and manage in the same way." *Id.* Finally, as to termination, Plaintiffs argue that the vast majority of Plaintiffs indicated in their declarations that they were not authorized to terminate any employees on their own. Consequently, although conceding that there are differences between Plaintiffs, Plaintiffs argue that "[t]he differences that do emerge . . . are too insignificant to warrant more than a modicum of weight." *Id.* at 1362.

The Court agrees with Plaintiffs and finds that the factual records appears to be largely unchanged from *Pendlebury* and the differences pointed out by Defendant simply relate to a difference in "management styles." As such, there are no material differences that would persuade this Court that the class is not similarly situated as to this factor.

In summary, when weighing the factors identified in 29 C.F.R. § 541.100(a)(1)-(4), the Court finds that Plaintiffs have met their burden of demonstrating they are similarly situated. While Defendant is right that "there are some differences throughout the class, it is not possible, nor would it be consistent with the intent of § 216(b), to require that the class be identical." *Id.* at 1361. Instead, the Court finds that

> when these differences are weighed against all of the evidence demonstrating the class is similarly situated, the scales are clearly tipped in Plaintiffs' favor. Many of the differences Defendant identifies are partially attributable to different management styles, either by the store manager or the district manager. In sum, every class under § 216(b) will have differences; however, class members need only be similar, not identical. If Defendant's contentions that the class must be similar in almost all respects was to prevail, the intent behind class certification under § 206(b) would be frustrated and the statute's class provisions would be effectively emasculated.

*Id.* at 1362.

### 2. Existence of Individual Defenses

Defendant next argues that the disparate testimony offered by Plaintiffs will create individualized issues regarding other aspects of Starbucks' defense. For instance, Defendant argues that even if Plaintiffs can show that they did not perform the store manager job at a level that makes them exempt, they are susceptible to the defense that they did not meet Starbucks' expectations. Defendant also argues that there are individualized credibility determinations, including but not limited to: the fact that Defendant will present testimony from store managers in the same district and under the same district managers as certain Plaintiffs that did not join in this litigation that can rebut the claims of certain Plaintiffs; Defendant may produce resumes from Plaintiffs touting their managerial roles that contradicts their deposition testimony; and Defendant will present evidence of fabrication of evidence to support individual Plaintiffs' claims. Defendant argues that resolution of these issues will require individualized evidence that will overwhelm the case and turn this collective action into an extended series of mini-trials, thereby making class treatment inappropriate.

Defendant largely raised these same issues before Judge Marra in *Pendlebury*. Much like Judge Marra, the Court is not persuaded these issues warrant decertification, particularly when considering that the Court has already concluded that the class is similarly situated. Such issues are "matters of credibility for the factfinder, not individualized *defenses*;" they "present issues of credibility and do not weigh heavily in favor of decertifying the class." *Pendlebury*, 518 F. Supp. 2d at 1362 (emphasis in original).

### 3. Fairness and Procedural Considerations

Finally, Defendant argues that because Plaintiffs' claims can be resolved only through individualized inquiries, handling them collectively raises significant fairness and procedural concerns that support decertification. Specifically, Defendant points to the large amount of conflicting testimony regarding day-to-day activities as presenting procedural difficulties given the sheer number of witnesses, making the case unmanageable. Further, Defendant argues that allowing this case to proceed collectively will infringe upon its due process rights by having to defend against Plaintiffs that are not similarly situated. In comparison, Defendant argues there is no prejudice to Plaintiffs if the class is decertified, as they will be free to proceed individually if they so choose.

Having already concluded that Plaintiffs "met their burden and demonstrated they are similarly situated in order to benefit from the advantages of a collective action under § 216(b)," the Court finds that there are no compelling fairness or procedural considerations that prevent the case from proceeding collectively. *Pendlebury*, 518 F. Supp. 2d at 1364.

## III. CONCLUSION

Accordingly, based upon the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Starbucks Corporation's Corrected Motion for Decertification [DE-240] is hereby **DENIED.** Plaintiffs will proceed as a class.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 28th day of June, 2011.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record